## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

FIFTH THIRD BANK,

                Plaintiff,

v.                              CIVIL  ACTION  NO.  3:08-0210

MCCLURE PROPERTIES, INC.,
VICTOR MCCLURE,

                Defendants.

### MEMORANDUM OPINION ORDER

Pending before the Court are Plaintiff Fifth Third Bank's ("Fifth Third") Motion for Summary Judgment (Doc. 53) and Defendants Victor A. McClure and McClure Properties, Inc.'s ("Defendants") Omnibus Motion in Limine (Doc. 69). For the following reasons, Plaintiff's motion is **GRANTED** and Defendants' motion is **DENIED as moot.**

### Background

This case, filed on March 27, 2008, and as amended on May 2, 2008, concerns a commitment letter entered into by the parties, on November 5, 2004, and a series of commercial loans made by the Plaintiff Fifth Third to Defendant McClure Properties, following the November 2004 agreement. The loans at issue were executed and delivered on June 6, 2005, and May 26, 2006, for the sums of $1,500,000 and $2,240,000, respectively. Each loan was issued to McClure Properties with Defendant Victor McClure serving as personal guarantor. The loans were issued for the express purpose of providing McClure Properties with the capital to construct and open a gas station and convenience store at 1434-36 3rd Avenue, in Huntington ("the Huntington Project"). The real

property located at 1434-36 3rd Avenue was owned by McClure Properties and served as collateral for the loans. Additionally, according to the 2004 commitment letter, a second property owned by McClure Properties was to serve as the collateral for a permanent loan the parties anticipated entering into, once construction of the Huntington store was complete. This second property, located in Cowen, West Virginia, is the site a gas station and convenience store owned and operated by McClure Properties ("the Cowen Store"). Finally, according to the disbursement schedule provided by Fifth Third, the May 2006 loan: (1) paid off the June 2005 loan, and (2) was fully disbursed on or before September 28, 2006. *See Pl.'s Mot. for Summ. J.*, Ex. E (Doc. 53-5).

Fifth Third's Amended Complaint seeks action on the non-revolving draw note executed on May 26, 2006, for $2,240,000 plus interest, and on the personal guaranty provided by Mr. McClure on that same date. In the complaint, Fifth Third requests a finding of default against Defendant McClure Properties on the May 2006 note in the principal sum of $1,134,795.69, plus accrued but unpaid interest in the amount of $34,825.13 through January 11, 2008 and continuing thereafter at the rate of $240.36 per day; late fees of $2,670.85; and all other late fees, fines, expenses and advances that accrue on the note on and after January 11, 2008. Additionally, Plaintiff requests a judgment against Defendant McClure individually in the principal sum of $1,134,795.69, plus accrued but unpaid interest in the amount of $34,825.13 through January 11, 2008 and continuing thereafter at the rate of $240.36 per day; late fees of $2,670.85; and all other late fees, fines, expenses and advances that accrue on the note on and after January 11, 2008.[1]

---

[1] This request was updated in an affidavit from Benjamin Curtis, an officer of Fifth Third, dated March 21, 2010. *See Pl.'s Mot. for Summ. J.*, Ex. B (Doc. 53-5). There, Mr. Curtis attests that, as of February 23, 2010, McClure Properties and Victor McClure are in default in the principal sum of $1,766,210.36, plus accrued but unpaid interest in the amount of $33,977.08 through February 23, 2010 and continuing thereafter at the rate of 4.25% per annum to the date

The McClure Defendants answered Plaintiff's Amended Complaint on August 1, 2008, providing a general denial of all allegations against them and raising a series of counterclaims against Fifth Third.  In their answer, the McClure Defendants admit: (1) that Exhibit A to the Plaintiff's complaint is a true and accurate copy of the May 2006 note, and (2) that Exhibit B is a true and accurate copy of Mr. McClure's guaranty of the same.  *See Defs.' Answer* (Doc. 12), at ¶¶ 5 & 6.  Nonetheless, the McClure Defendants deny liability for their default on the May 2006 note on the basis of their counterclaims.  These counterclaims include claims against Fifth Third for: (1) breach of the terms of the November 5, 2004 commitment letter; (2) breach of fiduciary duty and/or of an implied duty to act in good faith; (3) fraud; (4) intentional misrepresentation; (5) negligent misrepresentation; and (6) negligence.

On February 23, 2010, Fifth Third moved for summary judgment on all issues and claims. Essentially, Fifth Third argues that this is a simple breach of contract action to enforce the May 2006 promissory note and the loan agreement guaranty.  Additionally, Fifth Third claims that it is entitled to all cost and expenses incurred in enforcement, including attorney fees, pursuant to section 11.03 of the loan agreement.  The McClure Defendants oppose summary judgment on the basis of their counterclaims.  Accordingly, these counterclaims are discussed below.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

---

of judgment.  According to the affidavit, the principal sum due has increased more than $600,000 since the filing of Plaintiff's complaint (which alleges a principal sum due of $1,134,795.69).  There is no explanation for this increase.

a matter of law." *Fed. R. Civ. P. 56(c)*.   The availability of summary judgment therefore turns on whether a proper jury question exists in a pending case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970).

When considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court considers the facts in the light most favorable to the nonmoving party, *Adickes,* 398 U.S. at 159, drawing any permissible inference from the underlying facts in a manner that supports the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts," however. *Id.* at 586. It must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256.

### Analysis

Neither the applicable law nor the general facts are in dispute.  From 2004 to 2006, Plaintiff Fifth Third Bank and the McClure Defendants entered into a series of commercial contracts, which included the May 2006 promissory note for an interim construction loan and the related personal guaranty.  In their answer, the McClure Defendants admit to the truth and accuracy of these 2006 contracts.  Further, the McClure Defendants do not contest that they are in default of these agreements.  As a result, this case is a simple contract enforcement action, and the question raised by Plaintiff's motion is whether the counterclaims asserted by Defendants establish a genuine issue of material fact regarding a legal defense sufficient to prevent summary judgment.

**Defendants' Claim that Fifth Third Breached First Because It Failed to Fulfill Its
Obligations Under the 2004 Commitment Letter**

One claiming rights under a contract must be able to show that he has performed his duties thereunder. *Hupp v. Sasser*, 490 S.E.2d 880, 889 (W.Va. 1997); *see also* Restatement (Second) of Contracts § 237 (1981).

> The rule is based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party. The central problem is in determining which party is chargeable with the first uncured material failure of performance. Restatement (Second) of Contracts § 237, cmt. b.

The McClure Defendants argue that they cannot be held liable for their default on the May 2006 loan agreement or personal guaranty because Fifth Third breached first, by failing to fulfill its obligations under the November 2004 commitment letter.

As ruled at the pretrial conference, the Court finds the 2004 commitment letter is a legally enforceable contract. "The fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent." Syl. Pt. 9, *Ways v. Imation Enterprises Corp.*, 589 S.E.2d 36 (W. Va. 2003). Fifth Third argued that the 2004 commitment letter failed to qualify as a legal contract due to a lack of mutual assent. The Court disagrees. The McClure Defendants and Fifth Third are each sophisticated business entities, or individuals, competent to enter into a commercial contract.[2] The commitment letter concerned a legal matter; an agreement by the bank to loan McClure Properties "up to" $2,200,000 "for the construction of a new gas station and convenience store in Huntington, WV[,]" for a set term (9 months), at a given interest rate (prime

---

[2]The commitment letter is signed by Victor McClure, as a representative of McClure Properties, and by Patrick Hickman, who at the time was a Vice President at Fifth Third Bank.

plus 1%).  *See 2004 Commitment Letter* (Doc. 53-3), Ex. C.  Moreover, McClure Properties

provided valuable consideration for Fifth Third's commitment to loan.  It agreed to pay interest on

the loan and $500 in loan fees.  Additionally, McClure Properties provided a security interest in the

Huntington Property and Victor McClure provided a personal guaranty.  Finally, the plain language

of the commitment letter demonstrates a clear intent, on the part of all parties, to be bound.  *See id.*

("[T]he actual loan documents will include *other* terms and conditions not outlined herein.")

(emphasis supplied); *id.* ("**Survival**: This Loan Agreement shall survive the closing of the Loan.").

Accordingly, the Court finds the commitment letter is a valid and enforceable contract, which

represents a portion of the mutual obligations agreed to by the parties.  *See, e.g., Holiday Plaza, Inc.*

*v. First Fed. Sav.  & Loan Ass'n of Clarksburg*, 285 S.E.2d 131 (W. Va. 1981) (commitment

agreement for a future loan held to be a valid contract).

      The pertinent question with regard to the McClure Defendants' first counterclaim, therefore,

is whether Fifth Third breached the 2004 agreement.  The McClure Defendants claim that Fifth

Third breached the 2004 contract because it failed to: (1) assure the Huntington Project's permanent

financing was obtained through the SBA 504 Program, and (2) disburse the promised funds (the full

$2,200,000) in a timely manner.  The McClure Defendants contend that Fifth Third's breach

occurred first and caused Mr. McClure's business to fail.  As a result, the defendants argue that their

default was the result of Fifth Third's breach and, as such, should be excused.

      To resolve the issue, the Court looks to the terms of the 2004 contract.  Once formed, a

contract is construed according to the plain, ordinary meaning of the language used.  *See* Syl. Pt. 9,

*Arnold v. Palmer*, 686 S.E.2d 725 (W. Va. 2009) ("A valid written instrument which expresses the

intent of the parties in plain and unambiguous language is not subject to judicial construction or

interpretation but will be applied and enforced according to such intent."); *Rollyson v. Jordan*, 518 S.E.2d 372, 376 (W. Va. 1999) ("Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them.") (quoting 4B Michie's Jurisprudence *Contracts* § 40, at 56 (Repl.Vol. 1986)).  The 2004 commitment letter is four pages long.  The portion of the commitment letter that refers to SBA financing is found on page three and reads, in total: "**Permanent Financing**: Once construction is complete and the business is operating, the permanent loan will be allocated as follows.   Fifth Third Bank – 50%, WVEDA/SBA 504 Program – 35%, borrower equity – 15%."  *2004 Commitment Letter* (Doc. 53-3), Ex. C.  These statements are followed by an agreement that the permanent loan will be collateralized by a Deed of Trust on the Cowen Property, which includes a time frame for collateralization and a provision that "[a]ll equity shall be injected into the project prior to the closing of the permanent loan."  *Id.* Beyond these provisions, however, there is no agreement concerning the structure of the permanent loan, or the permanent loan's distribution.  Moreover, there are no additional mentions of the WVEDA/SBA 504 Program in the 2004 commitment letter.

According to the McClure Defendants, the commitment letter should be construed against its drafter, Fifth Third Bank, and read to establish an affirmative duty on the part of the bank to assure that McClure Properties obtains SBA 504 Program financing for its permanent loan. Specifically, the McClure Defendants claim that "[the] Commitment Letter *guaranteed* Mr. McClure a loan amount of up to $2,200,000.00 *and that the SBA 504 program would be used for 35% of the loan*." *Defs.' Resp. in Opp'n* (Doc. 57), at 3 (emphasis supplied); *see also McClure Depo.* (Doc. 57-2), Ex. B, at 101 (testifying that the bank breached the commitment letter because "they did not follow the 504 program").  In short, the defendants claim that the bank had an obligation to either

apply for, or otherwise assist the McClure Defendants in obtaining, SBA financing for the Huntington Project. *Defs.' Resp. in Opp'n* (Doc. 57), at 7, 11-12.

To support this contention, the McClure Defendants point to the commitment letter and the deposition testimony of Victor McClure.[3] The language of the commitment letter Defendants argue supports their contention is quoted above. Additionally, in deposition, Mr. McClure testifies that Fifth Third promised:

> That they would follow the 504 program. And the whole point of the 504 program is to conserve your working capital, and they understood that and agreed to that. And they told me that they had SBA experts at the bank that worked with these types of loans and that they understood how it worked. *McClure Depo.* (Doc. 57-2), Ex. B, 102-03.

Accordingly, Mr. McClure argues that he reasonably relied on the bank's assertions and read the duty to obtain or otherwise assist the McClure Defendants in obtaining SBA financing into the 2004 contract. The Court finds this argument unconvincing. The plain language of the 2004 contract is unambiguous and it does not establish a duty on the part of the bank to obtain, or otherwise assure,

---

[3]In addition, the McClure Defendants submitted two affidavits following the pretrial conference on April 19, 2010: an affidavit from Victor McClure and one from Patrick Hickman, the Vice President at Fifth Third who signed the 2004 commitment letter. These affidavits support Defendants' contention that Mr. McClure and Mr. Hickman believed that, under the commitment letter, Fifth Third should have assured SBA financing for the Huntington Project. Specifically, in his affidavit, Patrick Hickman attests: "Fifth Third Bank should have submitted Mr. McClure's project to the SBA at the conclusion of construction." *Hickman Affidavit* (Doc. 73), Ex. B, at ¶ 11. The affidavits were submitted in conjunction with the McClure Defendants' supplemental opposition, which was ordered by the Court at the pretrial conference. The Court's order did not allow for the submission of new evidence, however. To the contrary, the Court clearly instructed Defendants to point to "any evidence *in the discovery record* which supports Defendants' argument against summary judgment." *See* Doc. 72 (emphasis supplied). The submission of additional evidence contravenes the Order and, thus, these affidavits will not be considered and summary judgment is determined according to the record as it existed at the pretrial conference, on April 19, 2010. Even if the affidavits were considered, however, the Court finds they are not sufficient to alter, or create additional duties not contained within, the 2004 contract.

SBA funding.  Because the contract is unambiguous, the Court will not use Mr. McClure's deposition to create such a duty.

In West Virginia, contracts are construed according to the plain meaning of the language used.  *See, e.g., Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 901 (W. Va. 2009).  As a result, parol evidence is only allowed if a contract is ambiguous.  *Id.* ("It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become[s] a question of fact."); *see also Holiday Plaza*, 285 S.E.2d at 133 ("Prior or contemporaneous statements may not be admitted to vary written contracts, but West Virginia has always permitted parol evidence to explain uncertain, incomplete or ambiguous contract terms.").  "The question as to whether a contract is ambiguous is a question of law to be determined by the court."  Syl. Pt. 4, *Blake*, 685 S.E.2d 895.  Thus, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous."  *Id.*

In determining whether Fifth Third agreed to obtain or otherwise assist McClure Properties in obtaining SBA financing, the 2004 commitment letter is not ambiguous.  *See* Syl. Pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639 (W. Va. 1985) (holding a contract is only ambiguous if it is reasonably susceptible to two different meanings or reasonable minds might disagree as to its meaning).  When they intended to establish affirmative duties, the parties to the 2004 commitment letter did so explicitly.  For example, in the "**LOAN CLOSING REQUIREMENTS**" section of the contract, the parties provided that: "*Obligors shall* have provided to Lender such documents and information as Lender or its counsel may require;" "*Obligors shall* execute a note...;" "*Obligors shall* pay all applicable closing costs;" "*Lender is to be furnished* with a standard ALTA mortgage title insurance commitment;" "*Lender shall* engage an environmental consultant;" "*Lender*

*shall* engage an appraiser;" and so forth. *2004 Commitment Letter* (Doc. 53-3), Ex. C. (emphasis supplied). Additionally, in the "**Financial Information**" section, the contract provides: "*Obligors shall* agree to provide to Lender from time to time ... certified copies of their respective financial statements..." *Id.* (emphasis supplied). Needless to say, the parties to the contract knew how to use clear language to establish affirmative duties and did so when such duties were intended. This is not the case in the "**Permanent Financing**" section. The "**Permanent Financing**" section reads, in total: "Once construction is complete and the business is operating, the permanent loan will be allocated as follows. Fifth Third Bank – 50%, WVEDA/SBA 504 Program – 35%, borrower equity – 15%." *Id.* No obligatory language is contained in that section. Additionally, no particular party ("Obligors" or "Lender") agrees to any duty with regard to the provision or structure of permanent financing. In contrast, the permanent financing section merely provides a projection of how the permanent loan will be allocated, once established. This projection does not include specific duties as to how the loan will be secured. Consequently, and in light of the clear language of obligation used in other sections of the 2004 agreement, the Court declines to imply such a duty where none is established or intended by the parties. *See Rollyson*, 518 S.E.2d at 376 (The parties' "agreement furnishes the law which governs them."). Thus, because the 2004 contract does not contain an obligation on the part of Fifth Third to obtain (or otherwise assist in obtaining) SBA financing, the bank did not breach the agreement by failing to do so.

The Court reaches a similar conclusion with respect to the timing of disbursements. Defendants claim that "Fifth Third Bank committed itself to lending Mr. McClure money in a timely fashion, to insure that his convenient store would open on time." *Defs.' Resp. in Opp'n* (Doc. 57), at 1. Defendants further claim that Fifth Third breached this duty and that such breach, ultimately,

resulted in the McClure Defendants' default.  Accordingly, Defendants claim they are not liable for their default because the bank breached first.

Again, the Court looks to the terms of the 2004 contract to resolve the matter.  The 2004 commitment letter contains no time line for disbursement and no disbursement schedule is attached.  Therefore, the contract does not explicitly answer the question of what constitutes a "timely" disbursement.  In the absence of a concrete time schedule, the Court reviews the agreement as a whole to determine timeliness.

The 2004 commitment letter specified that Fifth Third agreed "to provide funding for the construction of a new gas station and convenience store." *2004 Commitment Letter* (Doc. 53-3), Ex. C.  The Court therefore implies a duty on the part of the bank, which would be triggered once the construction loan was established, to disburse the $2,200,000 it agreed to loan in 2004 in a reasonable manner consistent with industry standards for construction loans.  As a result, the question presented by Defendants' untimeliness defense is whether Fifth Third's disbursement of the $2,240,000 it loaned McClure Properties, between November 2004 and September 2006, complied with these industry standards.

At first glance, the issue is a closer call than the question presented by the SBA 504 Program.  The McClure Defendants present the deposition testimony of Victor McClure, *see McClure Depo.* (Doc. 57-2), Ex. B; the business plan for the Huntington Project produced by Quantitative Market Research, *Business Plan* (Doc. 57-1), Ex. A; and the expert report of Laura Savory Miller, *Miller Report* (Doc. 57-3), Ex. D, to support their contention of untimeliness.  Victor McClure attests that Fifth Third unreasonably delayed disbursement.  *McClure Depo.* (Doc. 57-2), Ex. B, at 102.  He attests that the delay occurred in contravention of his expectations entering into the 2004 contract

and of the contract itself.  *Id.*  Nonetheless, for the reasons stated above and below, the Court will

not use Mr. McClure's testimony to add terms regarding timeliness to the 2004 contract.

The 2004 commitment letter is just that; a *commitment* to enter into a $2,200,000 loan to

fund the construction of a new gas station and convenience store.  *See 2004 Commitment*

*Letter* (Doc. 53-3), Ex. C.  Although the commitment letter sets out some of the terms of the agreed

upon future loan (a 9-month term, a prime plus 1% interest rate, and a value of up to $2,200,000),

it is not the loan contract.  *Id.* ("Fifth Third Bank, Ohio Valley is pleased to submit this *commitment*

to provide funding ... Please note that *the actual loan documents* will include other terms and

conditions not outlined herein.") (emphasis supplied).  As ruled, the commitment letter is a valid and

enforceable contract.  Thus, by sending the signed letter to McClure Properties, the bank obligated

itself to be bound by the terms contained therein.  The letter does not, however, bind the bank to

terms not contained within the four corners of that contract.

To the contrary, the 2004 letter plainly indicates that, in November 2004, the parties agreed

to enter into a loan, as specified, contingent on a series of disclosures and other conditions.  *See id.*

("Prior to, or at the closing of the Loan, Obligors shall have provided to Lender such documents and

information as Lender or its counsel may require in connection with the Loan, Obligors, Guarantors

and/or Properties (all such documents and information to be in form and substance satisfactory to

Lender), including but not limited to ...").  The parties then entered into the construction loans for

the Huntington Project in June 2005 and May 2006.  Clearly, the 2004 contract is not the only legal

contract entered into by the parties.  It therefore contains only a portion of the parties' mutual

obligations; and a time line for disbursement is not one of them.

Thus, the Court finds that the 2004 contract, at a maximum, establishes an implied duty on

the part of Fifth Third to disburse funds, once loaned, in a reasonable manner consistent with industry standards for construction loans. The Court further finds Victor McClure's deposition insufficient to establish a triable fact concerning whether such standards failed to be met.[4] Accordingly, the deposition testimony is insufficient to withstand summary judgment on the issue. *See Anderson*, 477 U.S. at 256 (holding that the non-moving party must provide some "concrete evidence from which a reasonable juror could return a verdict in his favor").

Next, the Court looks to the expert report. The Miller Report concludes that McClure Properties suffered damages of $91,624 as a result of Fifth Third's delay in disbursement. *Miller Report* (Doc. 57-3), Ex. D. This conclusion is based upon Ms. Miller's finding that, "[u]nder the terms of the Commitment Letter, funds would have been disbursed as follows: $401,250 in November 2004 ... Equal monthly disbursements of $229,843.75 from December 2004 through July 2005." *Id.* Ms. Miller titles this finding an "assumption of projected disbursement" and explicitly states that her conclusions are based upon the "facts and/or assumptions" contained in her report. *Id.*

The Court is unpersuaded. Ms. Miller seeks to provide an expert opinion of the terms and effects of the 2004 contract. However, a plain reading of the agreement does not support Ms. Miller's assumption that Fifth Third agreed to distribute the $2,200,000 loan committed to in "[e]qual monthly disbursements of $229,843.75 from December 2004 through July 2005." As noted, the contract contains no time line for disbursement and no disbursement schedule is attached, or otherwise referred to. Therefore, although the 2004 agreement provides that the loan, once

---

[4]The deposition merely provides that Mr. McClure's expectations, which were not recorded in the 2004 agreement, were not met. This does not render the contract ambiguous or justify that it be construed against the drafter, Fifth Third.

13

established, will be for a term of 9 months, the 2004 letter does not provide when this 9-month term

will begin.  Accordingly, there is no support in the record for Ms. Miller's assumption that the 9-

month term was set to begin in November or December 2004.  To the contrary, a close reading of

the 2004 contract shows that the parties did not expect to enter into the construction loan until a

series of disclosures were conducted and additional terms agreed to.  *See supra*.  A review of the

facts shows that the parties' initial construction loan was not finalized until June 2005.  Thus, once

viewed in light of the terms of the 2004 contract and the facts of this case, a critical assumption

underlying the Miller Report proves unreliable.  As a result, the report does not support the McClure

Defendants' contention that disbursement was untimely.

Finally, a review of the business plan produced by Quantitative Market Research leads the

Court to the same conclusion – that the McClure Defendants have failed to establish a triable issue

with regard to timeliness.  *See Business Plan* (Doc. 57-1), Ex. A.  The business plan, which it

appears was made available to Fifth Third at the time of the commitment letter, contains no specific

time lines for the construction or opening of the gas station and convenience store.  *Id.*  The plan

contains charts outlining the projected sales and profits for the first 10 years the gas station and

convenience store; however, these years are referred to generically (as "Year 1" to "Year 10") and

no specific dates are included.   Without more, this June 22, 2004, document does not establish a

genuine issue of fact with regard to timeliness because the business plan does not contain any

expectation, or other information, regarding the timing of the McClure Defendants' construction

loan or the grand opening of the business. Thus, the business plan provides no support for

Defendants' argument that the loan should have been fully disbursed by June 2005.

In contrast, when reviewed carefully, the business plan supports the bank's argument that

14

the loan was disbursed, and the store opened, in a commercially reasonable manner.  Specifically, in the section of the plan entitled "Time," Quantitative Market Research explains: "Bringing a Gas/C-Store facility to completion is a time consuming process.  We find the time span from initial proposal to grand opening date is extending.  **It is not uncommon for it to take two to three years, or more; from the time we deliver the Market Study until a store is opened.**  This trend appears to be evolving all over the country."  *See id.* (emphasis in original).  The "Market Study" was completed on June 22, 2004.  The construction loan was fully disbursed and the Huntington Store opened by September 2006.  The time between the market study and grand opening was, therefore, approximately two years and three months.  This time delay was not satisfactory to McClure Properties.  However, according to Quantitative Market Research's business plan, the delay was, at a minimum, consistent with industry expectations and standards (i.e., the time from market study to grand opening took 2 to 3 years).  The Court therefore finds that the business plan fails to establish a triable issue on the McClure Defendants' untimeliness defense.

In sum, without concrete or contractual evidence that Fifth Third entered into a specific disbursement schedule for McClure Properties' construction loan, or that the bank breached industry standards for such disbursal, the Court finds the Defendants' untimeliness defense unconvincing.  The Court further finds that the McClure Defendants have not established a genuine issue of fact to support their claim that Fifth Third breached the SBA 504 Program provision of 2004 commitment letter.  Accordingly, these counterclaims do not present a defense to summary judgment.  *See, e.g., Anderson*, 477 U.S. at 256.

### Defendants' Claim that Fifth Third Breached A Fiduciary Duty And/Or
### An Implied Duty to Act in Good Faith

Plaintiff seeks summary judgment on the McClure Defendants' claim that the bank breached a fiduciary relationship and/or an implied duty of good faith and fair dealing on the grounds that: (1) the relationship between Fifth Third and McClure Properties is one of creditor and debtor and no fiduciary duty is involved in such a relationship, and (2) Fifth Third did not breach the duty of good faith and fair dealing implied in the 2004 contract.  The Court agrees with Plaintiff.

As noted, Fifth Third, McClure Properties, and Victor McClure are all sophisticated commercial entities, or individuals.  Thus, the 2004, 2005, and 2006 contracts between the parties constitute arms length business transactions.  A fiduciary duty is a "duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person.  It is the highest standard of duty implied by law."  *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488, 493 (W. Va. 2005) (quoting *Elmore v. State Farm Mut. Auto. Ins. Co.*, 504 S.E.2d 893, 898 (W. Va. 1998)).  Like most commercial transactions, a debtor-creditor relationship is not characterized by a fiduciary relationship or duty.  *State ex. rel. Ins. Comm'r of State of W.V. v. Blue Cross & Blue Shield of W.V.*, 638 S.E.2d 144, 156 n. 37 (W. Va. 2006) ("A debt is a contractual obligation of one person to pay a fixed sum of money to another.  The difference between a trust and a debt ... lies chiefly in the fact that the beneficiary of a trust has a beneficial interest in the trust property and the creditor has merely a personal claim against his debtor.  A debt is not a trust and involves no fiduciary relationship or duty.") (ellipses in original); *see also Elmore*, 504 S.E. 2d at 898 (finding the relationship between an insurer and a third-party claimant is adversarial and not characterized by a fiduciary duty).  This would be sufficient to rebut the McClure Defendants' claims.  However, section 11.02(c) of the May 2006 loan contract between Fifth Third and McClure Properties also

16

disclaims the existence of a fiduciary relationship or duty.  It specifically  provides:

> Lender does not have and shall not have and fiduciary or similar duty to Borrower or any Guarantor.

Accordingly, the claim for breach of fiduciary duty fails as a matter of law and is not a defense to summary judgment.

The same is true for the McClure Defendants' counterclaim for breach of good faith and honorable dealing.  Referring to the 2004 contract, Defendants argue that Fifth Third "refused to fulfill its obligations under the agreement in bad faith and willfully and expressly breached the terms of the contract."  *Defs.' Answer* (Doc. 12), at ¶ 43.  Defendants seek punitive damages associated with such breach.  *Id.* at ¶ 45.

In West Virginia, there is a covenant of good faith and fair dealing implied in every contract. *Hoffmaster v. Guiffrida*, 630 F.Supp. 1289, 1290 (S.D. W.Va. 1986) (citing Restatement (Second) of Contracts § 205 (1981)).  Further, under West Virginia law, "good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  *W.V. Code § 46-1-201(20).*  The McClure Defendants expressly claim a breach of good faith based on Fifth Third's alleged breach of  the 2004 commitment letter.  Therefore, the claim effectively reasserts those breach of contract claims addressed above (that the bank breached the 2004 contract by failing to secure SBA financing for the permanent loan and fund the construction loan in a timely manner) recast as tort.  The Court found these claims untenable as contract claims and reaches the same conclusion here.

17

## Defendants' Claims for Fraud, Intentional Misrepresentation,
## Negligent Misrepresentation and Negligence

Again, Defendants' fraud, intentional misrepresentation, negligent misrepresentation, and negligence claims arise out of Fifth Third's alleged breach of the 2004 contract. With regard to the fraud and intentional misrepresentation claims, the McClure Defendants allege that "[o]n or about November 5, 2004 [Fifth Third] specifically represented to [Defendants] that it would loan $2,200,000 for the project ... [and] that once construction was complete ... permanent financing would be provided which included participation in the SBA 504 Program which was subject to a fixed rate of interest." *Defs.' Answer* (Doc. 12), at ¶ 48. Defendants claim "[i]n fact, [Fifth Third] had intended to provide only $1,500,000 of financing that was subject to a fluctuating variable rate of interest ... [and the] representations were made by [Fifth Third] with the intent to deceive and defraud [Defendants] and to induce him to enter the [2004] contract, and to forgo other opportunities, for the financing of the project." *Id.* at ¶¶ 49 & 50. Defendants then claim that "[t]he purpose of the fraud was for Fifth Third Bank to obtain Mr. McClure's substantial holdings in real property." *Defs.' Resp. in Opp'n* (Doc. 57), at 14.

There is no evidence in the record to support Defendants' contentions. To the contrary, the Court again agrees with Plaintiff that the fraud, intentional misrepresentation, negligent misrepresentation and negligence claims are, effectively, breach of contract claims. As discussed *supra*, Fifth Third did not breach the 2004 contract. As a result, these counterclaims do not provide grounds to avoid summary judgment.

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damage because he relief upon it. Syl. Pt. 2, *Jennings v. Farmers Mut. Ins. Co.*, 687 S.E.2d 574 (W. Va. 2009) (quoting Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1981)).

Fraud includes intentional misrepresentation and the elements required to prove each tort overlap. *See* Syl. Pt. 6, *Folio v. City of Clarksburg*, 655 S.E.2d 143 (W. Va. 2007); *id.* at 150.

 "Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue ... [i]t is not indispensable to a recovery that the defendant actually knew them to be false." *Id.* at 150. Defendants' fraud claims rely upon alleged false representations "regarding the use of the 504 program" made by Patrick Hickman and other Fifth Third representatives. Further, Defendants contend that they reasonably relied upon these representations "because Fifth Third Bank memorialized them in a Commitment Letter." *Defs.' Resp. in Opp'n* (Doc. 57), at 13. In other words, Defendants concede that their fraud claim is a breach of contract claim.

"Fraud cannot be predicated on a promise not performed. To make it available there must be a false assertion in regard to some *existing* matter by which a party is induced to party with his money or property." Syl. Pt. 3, *Croston v. Emax Oil Co.*, 464 S.E.2d 728 (W. Va. 1995) (emphasis in original). The Court has already found that Fifth Third did not violate the terms of the 2004 agreement. Consequently, Defendants' fraud claims fail.

The standard for reviewing the McClure Defendants' negligence claims is less demanding. A finding of negligence requires that Defendants show: (1) the existence of a legal duty, (2) the breach of that legal duty by Fifth Third, and (3) and damage to the McClure Defendants as a proximate result of that breach. *Sewell v. Gregory*, 371 S.E.2d 82, 84 (W. Va. 1988). A *prima facie* case of negligence is established if the claimant shows that the counterclaim defendant "has been guilty of some act or omission in violation of a duty owed to the [claimant]." Syl. Pt. 3, *Conley v. Stollings*, 679 S.E.2d 594 (W. Va. 2009). "No action for negligence will lie without a duty

19

broken[,]" however.  *Id.*  And, "[i]n matters of negligence, liability attaches to the wrongdoer, not because of a breach of a contractual relationship, but because of a breach of duty[.]" *Sewell*, 371 S.E.2d at 84.

Here, the Court again finds that the McClure Defendants' negligence claims are actually breach of contract claims recast as tort.  Defendants contend "Mr. McClure has alleged a prima facie case of negligence as Fifth Third Bank breached its duty to fund the loan in a reasonable manner." *Defs.' Resp. in Opp'n* (Doc. 57), at 15.  In other words, Defendants' negligence claim reasserts the claim that Fifth Third unreasonably delayed the disbursement of funds discussed *supra*.  This is a contract claim.  Further, because the 2004 contract did not establish any explicit duties with respect to timeliness, there is no breach sufficient to withstand summary judgment.[5]

### Economic Duress

The McClure Defendants argue the May 26, 2006 contract is void due to economic duress.

The concept of "economic or business duress" may be generally stated as follows: Where the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss.  Syl. Pt. 1, *Machinery Hauling, Inc. V. Steel of W.V.*, 384 S.E.2d 139 (W. Va. 1989).

There are no facts in the record to justify a finding of economic duress.  To the contrary, the facts show that the May 2006 loan agreement is a valid contract, entered into by sophisticated business entities, for valuable consideration, and with mutual assent.  Accordingly, it should be enforced.  *See Ways*, 589 S.E.2d 36 at Syl. Pt. 9.

---

[5]Because the Court finds the McClure Defendants' tort claims are not actionable, it need not address the statute of limitations issue raised by Fifth Third.

### Costs and Attorneys Fees

Section 11.03 of the May 2006 contract provides:

> Borrower agrees to pay upon demand all of Lender's out-of-pocket expenses, including attorneys' fees, incurred in connection with this Agreement. ... This includes Lender's attorneys' fees and legal expenses, whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower will also pay any court costs in addition to all other sums provided by law.

The language of the provision is unambiguous. As a result, the Court finds the McClure Defendants must reimburse Fifth Third for its reasonable costs and expenses, including attorneys' fees. *See Arnold*, 686 S.E.2d 725 at Syl. Pt. 9; *Rollyson*, 518 S.E.2d at 380.

### Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED** and Defendants' omnibus motion in limine is **DENIED as moot.** The Court **FINDS** the McClure Defendants in default of the May 2006 loan agreement in the principal sum due, plus accrued but unpaid interest, and for all late fees, fines, expenses and advances accrued on the note. Additionally, the Court **ENTERS** judgment against Defendant McClure, individually, on the same. Due to the discrepancy in the amounts Plaintiff has claimed are due, *see* note 1 *supra*, the Court **ORDERS** Plaintiff to **FILE** an accounting that provides an explanation of the amount due **within 14 days**. If they so choose, Defendants are **ORDERED** to submit any response to Plaintiff's accounting within **7 days** of its filing. Finally, the Court **FINDS** the McClure Defendants must pay Fifth Third's reasonable costs and expenses, including the bank's attorneys' fees.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        July 8, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE